UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
COVINGTON

CIVIL ACTION NO. 12-38-JBC

JULIA CAROL TRAMMELL,                                                      PLAINTIFF,

V.                        **MEMORANDUM OPINION AND ORDER**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                              DEFENDANT.

\* \* \* \* \* \* \* \* \* \* \* \*

This matter is before the court upon cross-motions for summary judgment on Trammell's appeal from the Commissioner's denial of her application for Disability Insurance Benefits ("DIB"). The Court will grant Trammell's motion, R. 11, and deny the Commissioner's motion, R.13, because substantial evidence does not support the administrative decision.

At the date of her application for DIB, Trammell was a 45-year-old female with a high-school education and several years of college-level nursing and medical assistant education and recent work experience as a medical assistant in doctors' offices. AR 201, 253, 337. She alleged disability beginning April 2, 2008, due to degenerative disc disease, cervical and lumbar spondylosis, facet disease, carpal tunnel syndrome in both wrists and numbness in both feet. AR 238. She filed her application on April 1, 2009, and after several administrative denials and appeals, Administrative Law Judge ("ALJ") Christopher B. McNeil issued a decision

determining that Trammell was not disabled.  AR 59-72.  Under the traditional five-step analysis at 20 C.F.R. § 404.1520; *see also Preslar v. Sec'y of Health and Human Servs.,* 14 F.3d 1107, 1110 (6th Cir. 1994), the ALJ found that Trammell had not engaged in substantial gainful activity since April 2, 2008, the alleged onset date; that she had severe impairments consisting of degenerative disc disease, degenerative joint disease, carpal tunnel syndrome, an affective disorder, posttraumatic stress disorder, chronic pain syndrome, and obesity; that her impairments, whether considered singly or in combination, did not meet or equal one of the Commissioner's Listings of Impairment; that she retained the residual functional capacity ("RFC") to perform a reduced range of "light" level work, including the ability to stand and walk two hours in an eight-hour day and sit for six hours, occasionally stoop, kneel, crouch, and crawl, along with a need to avoid concentrated exposure to vibration and could sustain attention to complete simple, repetitive tasks where production quotas were not critical, tolerate coworkers and supervisors with limited interpersonal demands in an object-focused, nonpublic work setting, and adapt to routine changes in a simple work setting; and that, based on her RFC and the testimony of a vocational expert ("VE"), a significant number of unskilled jobs existed in the economy which Trammell could perform.  AR 61-71.  The ALJ thus denied to Trammell's claim for disability on March 18, 2011.  AR 71-72.  The Appeals Council declined to review, AR 6-8, and this action followed.

Trammell's issues on review are: (1) whether the ALJ properly weighed the medical evidence, including her obesity, and as a result relied on flawed VE testimony; and (2) whether the ALJ adequately evaluated her credibility.  Because the ALJ improperly weighed the medical evidence, a remand will be required for further consideration of the evidence.

The medical evidence includes objective studies such as MRI reports and nerve conduction velocity testing and hospital admissions, but primarily consists of office notes from Trammell's treating family physician, Dr. Douglas A. Godwerwis; a one-time consultative examination by Dr. Sumedha Englund, a physician; hearing testimony from Dr. Joseph Rubini, a board certified internist; and a report by Dr. James Ramsey, a non-examining physician employed by the Kentucky Department for Disability Determination who reviewed a portion of the evidence.  All of these sources offered some opinion regarding Trammell's residual functional capacity. The ALJ rejected every medical opinion except Dr. Ramsey's.  AR 67-68.  The ALJ singled out the rationale of a non-medical state agency reviewer, known as a single decision-maker ("SDM"), Monica Smith, as being accurate.  AR 68, 370-76.  Dr. Ramsey based his conclusions on the SDM's report with no elaboration.  AR 418.

The Commissioner's regulations provide that treating sources, such as Dr. Godwerwis, are generally given the most weight, since they are most likely to be able to provide a detailed, longitudinal picture of a claimant's medical impairments and "may be able to bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual

3

examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. § 404.1527(d)(2).  Examining sources, such as Dr. Englund, are entitled to less weight, but generally are given more weight than nonexamining medical sources such as Drs. Rubini and Ramsey. 20 C.F.R. § 404.1527(d)(1).  The opinion of a treating source is entitled to controlling weight if it is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2). Even when the treating source opinion is not entitled to controlling weight, "there remains a presumption, albeit a rebuttable one, that the opinion of a treating physician is entitled to great deference, its non-controlling status notwithstanding." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007), *citing* Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *4.

   Dr. Goderwis provided a medical source statement dated December 20, 2010, stating that Trammell's diagnosis was lumbar disc disease status post-surgery in October, 2005, cervical disc disease, degenerative joint disease status post-surgery of the right knee in 2008, chronic pain syndrome requiring narcotics and chronic neuropathic pain of the right leg and right arm, depression, hypertension, and a history of bilateral carpal tunnel syndrome.  AR 451.  He noted findings of a limited range of motion, pain in the right lower extremity with straight leg raising, and failed pain management. *Id.* Dr. Goderwis limited his patient to standing and walking one hour in an eight-hour day and sitting one to two hours, with a change of position every 15 minutes, to lifting no more than 10 pounds

occasionally and 5 pounds frequently and having a "seriously limited but not precluded" ability to grasp, turn, and twist objects due to carpal tunnel syndrome and right arm pain due to cervical disc disease.  AR 453-54. Her ability to use her fingers and hands for fine manipulation and reaching overhead were also "seriously limited but not precluded."  AR 455. She would need to avoid heights, and could do no pushing, pulling, kneeling, bending, or stooping.  AR 457.  He opined that pain would frequently interfere with attention and concentration and Trammell would frequently need to take unscheduled breaks and would likely be absent from work more than three times a month.  AR 456-57.

The ALJ rejected Dr. Goderwis's opinion because he felt it was inconsistent with his treatment records and with Trammell's statements.  AR 67. He was particularly critical of the physician's findings regarding manipulative ability, noting that there were no specific manipulation or radicular findings in his records. *Id.* The ALJ conceded that Trammell described difficulty holding objects at the hearing, but noted that she apparently told Dr. Englund she had no problems in this area and Dr. Englund's testing was negative. *Id.*

The ALJ's focus on cervical radiculopathy as the explanation for limitations on manipulation and grasping is somewhat selective. Trammell had an EMG/NVC test in October 2007 that was positive for moderate right median neuropathy at the wrist on the right, and mild median neuropathy on the left. AR 327.  In addition to this objective study, Dr. Goderwis found evidence of neuropathy in the form of positive Tinel's and Phalen's testing. While he speculated that Trammell's

5

symptoms might be due to her failure to take the medication Synthroid, he continued to note numbness in both the medial and ulnar area even after she resumed taking it. AR 385-87. Dr. Englund, the consultative examiner, reported that Trammell did not complain of limitations on "fine motor skills," but her examination does not specifically address the issue, saying only that her wrists had a normal range of motion and upper extremity strength was normal. AR 365, 367. Finally, Dr. Rubini, the medical expert, opined after a review of the entire case record that Trammell would need to avoid rapid, repeated hand motion. AR 89. The only source who supports the ALJ's finding of no manipulative restrictions is the SDM, Monica Smith, and by extension, Dr. Ramsey.

  Neither of the state agency reviewers had the benefit of a review of the entire record, and neither Monica Smith nor Dr. Ramsey saw the treating physician's opinion or the medical expert's opinion. "The importance of a non-examining source having a complete medical snapshot when reviewing a claimant's file was emphasized in a 1996 Ruling of the Social Security Administration: 'In appropriate circumstances, opinions from State agency medical and psychological consultants ... may be entitled to greater weight than the opinions of treating or examining sources ... if the State agency medical ... consultant's opinion is based on a review of a complete case record that includes a medical report from a specialist in the individual's particular impairment which provides more detailed and comprehensive information than what was available to the individual's treating source.'" *Rogers*, 486 F.3d at 245, n. 4, *citing* Soc. Sec. Rul. 96-6p, 1996 WL

374180, at *3. Smith and Ramsey did not perform a complete review, nor did they have access to a specialist report that was not available to Dr. Goderwis.

Moreover, the ALJ's reliance on an SDM opinion, AR 68, is contrary to agency policy, as Smith was not an acceptable medical source under the regulations. 20 C.F.R. § 404.1513. Trammell attaches to her brief a memorandum dated September 14, 2010, from Chief Administrative Law Judge John P. Costello stating that it was agency policy that findings made by SDMs are not opinion evidence and should not be evaluated in ALJ decisions, even as "other evidence" from non-medical sources. R. 11-1. In support, Costello cites the agency's Program Operations Manual System (POMS) at DI 24510.050C. POMS is "a policy and procedure manual that employees of the Department of Health & Human Services use in evaluating Social Security claims and does not have the force and effect of law," although its provisions are "persuasive." *Davis v. Sec'y of Health and Human Servs.*, 867 F.2d 336, 340 (6th Cir. 1989); *accord Ferriell v. Comm'r of Soc. Sec.*, 614 F.3d 611, 618 n.4 (6th Cir. 2010). Although the POMS provides additional support for the court's conclusion, it is unnecessary to reach this issue because the provisions of 20 C.F.R § 404.1513 are dispositive.

Trammell, who weighed 248 pounds at a height of 66 inches at the time of Dr. Englund's examination, AR 366, asserts that the ALJ did not "consider the combined effects of her obesity with other impairments" as set out in Soc. Sec. Rul. 02-1p, 2000 WL 628049. The Ruling was issued after the deletion of the former Listing of Impairment 9.09 at 20 C.F.R. Subpt. P, App.1. Pertinent portions

of 02-01p instruct the adjudicator to consider the effects of obesity "not only under the listings, but also when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity." SSR 02-01p, at *1. As previously noted, the ALJ found Trammell's obesity to be a "severe" impairment at Step Two of the sequential evaluation process. AR 61. SSR 02-01p provides that "[w]hen we identify obesity as a medically determinable impairment…we will consider any functional limitations resulting from the obesity in the RFC assessment, in addition to any limitations resulting from any other physical or mental impairments that we identify." *Id.* at *7. Although the Sixth Circuit has not considered the reach of 02-01p in a published decision, Trammell points to the unpublished case of *Kennedy v. Astrue*, 247 Fed.Appx. 761, 2007 WL 2669153 (6th Cir. 2007) in which the court found that the "record contains nothing to indicate that any effort was made to determine what, if any, effect Kennedy's obesity has on her current level of physical functioning . . . . The Commissioner concedes that evaluation of obesity requires 'an individualized assessment of the impact of obesity on an individual's functioning,' and that obesity is 'properly assessed by its actual impact on other systems through increased functional limitation.' This is exactly what was not done in this case." 247 Fed.Appx. at 767-78. As an individualized assessment was also lacking in Trammell's case, the effect of obesity on her functioning should be addressed on remand.

8

Trammell's mental status was assessed by a psychologist, Dr. Nancy Schmidtgoessling, Ph.D.; Dr. Joseph Cools, a licensed clinical psychologist who also testified at the administrative hearing; and nonexamining state agency psychologists Drs. Jan Jacobson and Marvin Blase. The ALJ stated that he gave "significant" weight to Dr. Schmidtgoessling and found the rationale of the state agency sources "persuasive." AR 70. Trammell objects to the ALJ's discounting the testimony of Dr. Cools that she would probably miss one or two days of work per month due to her symptoms. AR 70, 98. Trammell does not allege that the ALJ's mental RFC is inconsistent with Dr. Schmidtgoessling, however, and the regulations provide that greater weight is normally given to an examining source such as Dr. Schmidtgoessling than to a nonexaminer such as Dr. Cools. The ALJ was not required to give controlling weight to Dr. Cools.

On the issue of Trammell's credibility, she argues that it was inadequate for the ALJ to state that "the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." AR 64. In support, she cites *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012), in which the Seventh Circuit criticized of this standard "template." *Id.* at 645-46. This court is bound by Sixth Circuit precedent, which clearly endorses the use of the so-called *Duncan* test. *McCormick v. Sec'y of Health and Human Servs.*, 861 F.2d

998, 1003 (6th Cir. 1988), *citing Duncan v. Sec'y of Health and Human Servs.*, 801 F.2d 847 (6th Cir. 1986). A review of the ALJ's decision shows that he extensively examined Trammell's subjective testimony and gave reasons, albeit brief, for finding her not entirely credible: namely, that her subjective allegations were "not grounded in the objective evidence, consistent with activities of daily living, or consistently reported." AR 67. The court finds no error in this regard.

The ALJ's decision is not supported by substantial evidence. In such a circumstance, however, a court may reverse the decision and award benefits "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher v. Sec'y of Health and Human Servs.,* 17 F.3d 171, 173 (6th Cir. 1994). Because this is a case where further analysis of the medical opinions is needed and the evidence of disability is not "overwhelming," *see Mowery v. Heckler,* 771 F.2d 966, 973 (6th Cir. 1985), an award of benefits is not appropriate at this point.

Accordingly,

**IT IS ORDERED** that Trammell's motion for summary judgment, R. 11, is **GRANTED** in part and **DENIED** in part and that the case is **REMANDED** to the Social Security Administration for further proceedings.

**IT IS FURTHER ORDERED** that the Commissioner's motion for summary judgment, R. 13, is **DENIED**.

The court will enter a separate judgment.

Signed on December 18, 2012

*Jennifer B. Coffman*
JENNIFER B. COFFMAN, JUDGE
U.S. DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY